IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN REYNOLDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 18-1571 |
| v. ) | Judge Nora Barry Fischer |
| ) | |
| SLIPPERY ROCK UNIVERSITY OF PA; ) | |
| WILLIAM J. BEHRE, Ph.D., SRU President ) | |
| PHILIP K. WAY, Ph.D., SRU Provost; ) | |
| HOLLY MCCOY, SRU Asst. Vice President; ) | |
| PAUL LUEKEN, SRU Athletic Director, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM ORDER**

Presently before the Court are Plaintiff's Motion for Leave to File a Second Amended Complaint (Docket No. 96), Defendants' Brief in Opposition to same (Docket No. 102), and Plaintiff's Response (Docket Nos. 105; 106), the Court's December 30, 2020 Order (Docket No. 101), Dickie, McCamey & Chilcote, P.C.'s Objections to the Production of the Hill Reports and Order of December 30, 2020 (Docket No. 107), Plaintiff's Response to Dickie McCamey's Objections (Docket No. 108), and Dickie McCamey's Reply (Docket No. 112).[1]

After careful consideration of the parties' positions, and for the reasons that follow, Plaintiff's Motion for Leave to File a Second Amended Complaint [96] is GRANTED and Dickie McCamey's Objections [101] are OVERRULED IN PART.

**I.     Plaintiff's Motion for Leave to File a Second Amended Complaint**

---

[1] The Court has also had the benefit of reviewing the Dickie McCamey Reports *in camera*, as well as the Reynolds and Lueken depositions from the Jack Hill case.

In this motion, Plaintiff seeks leave to amend his complaint to add "a phrase to paragraphs 11, 61, and 63 which indicates that Coach Reynolds was retaliated [against] for exercising his First Amendment right to free speech during his deposition of August 1, 2018, when he disputed the report's apparent conclusions that he had violated NCAA rules pertaining to practice times." (Docket No. 96 at 3). It is Plaintiff's assertion that this allegation only came to light after additional discovery was provided following Defendants' motion for summary judgment. (Docket No. 105 at 4). Defendants do not consent to Plaintiff's request, contending, instead, that this "new allegation . . . could have, or should have, been known to him prior to December 21, 2020," the day he brought the motion. (Docket No. 102 at 4-5).

A party seeking leave to amend the pleadings after the deadline set by the Court's case management order must demonstrate good cause under Rule 16(b)(4) of the Federal Rules of Civil Procedure. *Greygor v. Wexford Health Sources, Inc.*, No. 2:14-CV-1254, 2016 WL 772740, at *2 (W.D. Pa. Feb. 27, 2016); *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) (clarifying "that when a party moves to amend or add a party after the deadline in a district court's scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure applies"). Good cause requires a demonstration of due diligence. *Greygor*, 2016 WL 772740, at *2; *Premier Comp Sols.*, 970 F.3d at 319. "Many courts have recognized that where the party knows or is in possession of information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent." *Greygor*, 2016 WL 772740, at *2 (internal citation and quotation marks omitted).

Only after the moving party demonstrates good cause under Rule 16(b)(4) does the Court consider whether the motion to amend meets the Rule 15 standard. *Id*; *Premier Comp Sols.*, 970 F.3d at 319 ("A party must meet [the Rule 16(b)(4)] standard before a district court considers

2

whether the party also meets Rule 15(a)'s more liberal standard."). Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "[t]he court should freely give leave when justice so requires." FED. R. CIV P. 15(a)(2). As this Court has previously explained:

> "[M]otions to amend pleadings should be liberally granted." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citations omitted). "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Id*. (citing *Lorenz v. CSK Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)). Further, "[i]t is well-settled that prejudice to the non-moving party is the touchstone for the denial of [leave to file] an amendment." *Cornell & Co. v. Occupational Safety and Health Review Com'n*, 573 F.2d 820, 823 (3d Cir. 1978) (citations omitted). "As to prejudice, the Court of Appeals has 'considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories.'" *Graham [v. Progressive Direct Ins. Co.]*, 271 F.R.D. [112,] at 122 [W.D. Pa. 2010] (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)). "Given the liberal standard under Rule 15(a), 'the burden is on the party opposing the amendment to show prejudice, bad faith, undue delay, or futility.'" *Id*. (quoting *Chancellor v. Pottsgrove Sch. Dist.*, 501 F.Supp.2d 695, 700 (E.D. Pa. 2007)). The test under Rule 15(a) "is in the disjunctive, meaning that if [Defendants] meet[ ] [their] burden to prove any one of these elements, the [amendment] should not be permitted." *Id*.

*Greygor*, 2016 WL 772740, at *2.

In this Court's estimation, Plaintiff has shown good cause under Rule 16(b)(4). On December 30, 2020, this Court granted Plaintiff's Second Motion for Reconsideration, ordering Defendants to produce to Plaintiff the unredacted Dickie McCamey Reports, finding them relevant and discoverable in light of email correspondence that was only recently produced. (Docket Nos. 101; 100). The Court concludes that Plaintiff was indeed diligent, as he was not previously in possession of the information that constitutes the basis of the motion to amend, despite multiple

3

requests. Plaintiff received the Paul Lueken Deposition in August of 2020, and Defendants produced 700 pages of related documents, including the above-referenced email correspondence, in November of 2020. *See Greygor*, 2016 WL 772740, at *4. ("[P]arties can always amend to conform to the evidence.").

Plaintiff has also met the standard under Rule 15 to permit the amendment as Defendants have not shown that it is unduly delayed, made in bad faith, or would be futile. To that end, Defendants were responsible for some of the delay with the late production of the email correspondence. (*See* Docket No. 100). This information was only provided to plaintiff's counsel after summary judgment proceedings, when defense counsel stated it would review and supplement discovery, resulting in 700 pages of additional discovery produced to Plaintiff on November 10, 2020. (Docket Nos. 105 at 3; 98 at 4). In this Court's estimation, the Plaintiff's motion is also not brought in bad faith. The Court's December 30, 2020 Order serves as a good faith basis for the additional discovery and Plaintiff's proposed amendment. (*See* Docket No. 101). And though Defendants argue that the "2013 Dickie McCamey Report[s] regarding the investigation into the death of student in 2011 can hardly be considered substantial and convincing evidence of retaliation in 2018," it appears that Plaintiff's argument is actually that his August 2018 deposition in the Jack Hill case, which he believes contradicted the Dickie McCamey Reports, provided a basis for retaliation in November 2018.[2] (Docket Nos. 102 at 6; 105 at 9-10). Additionally, the Rocket article and email correspondence circulating it occurred in November 2018, without reference to the Dickie McCamey Reports, which discussed a number of the issues raised in that article. (Docket No. 100). Therefore, the amendment is also not futile.

---

[2] Specifically, Reynolds gave his deposition on August 1, 2018. He was placed on administrative leave on November 2, 2018. His suspension and separation were in December 2018 and January 2019. (Docket No. 102 at 6).

## II. Dickie, McCamey & Chilcote, P.C.'s Objections to the Production of the Hill Reports and Order of December 30, 2020

As previously referenced, after the death of a student, Jack Hill, Jr., in 2011, Slippery Rock University ("SRU") commissioned outside counsel, Dickie McCamey, to conduct an investigation into the circumstances surrounding Jack Hill's death. Dickie McCamey produced two reports, one dated March 12, 2013 and the other dated September 4, 2013 (the "Dickie McCamey Reports" or "Hill Reports"). (Docket No. 107 at 2). The Dickie McCamey Reports are an exhibit in an ongoing state court case involving the death of Jack Hill (the "Jack Hill case").[3]

Dickie McCamey objects to the production of these reports in this case and argues that they are subject to the work product doctrine, as they were prepared in anticipation of litigation and Plaintiff has not shown a substantial need for them because he can just as easily cite testimony from his and Paul Lueken's depositions in the Jack Hill case. (Docket No. 107 at 5-6). Dickie McCamey also argues that the work product privilege was not waived because SRU never actually made any disclosure to Reynolds, and regardless, protection under the attorney work product doctrine belongs to the attorney, rather than the client. (*Id*. at 6-7).

Plaintiff responds that Defendants never identified the Dickie McCamey Reports in their privilege logs and did not assert work product privilege in the responses to Plaintiff's requests for the reports. (Docket No. 108 at 10-11). Further, Plaintiff argues that the fact that the Dickie McCamey Reports were disclosed in the Jack Hill case to plaintiff's counsel, the NCAA, and Defendant Lueken renders any work product privilege waived. (*Id.* at 4-5).

---

[3] *Jack Hill, Sr. v. Slippery Rock University, et al.*, No. AD-14-10570 (Butler County CCP).

"The work product doctrine, codified by Rule 26(b)(3) of the Federal Rules of Civil Procedure, provides that items prepared in anticipation of litigation are generally protected from discovery by an opposing party. A document is considered to have been prepared in anticipation of litigation if 'in light of the nature of the document and the factual situation of the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Smith v. Life Inv'rs Ins. Co. of Am.*, No. 2:07-CV-681, 2009 WL 2045197, at *3 (W.D. Pa. July 9, 2009) (quoting *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir. 1993)).

"Generally, documents created as part of an internal investigation . . . are considered to be made in anticipation of litigation for the purposes of the work product doctrine." *Id*. (citing *Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981)). "'Fact' work product is discoverable upon a showing of substantial need, while 'core or opinion' work product (which consists of the mental impressions, conclusions, opinions and legal theories of an attorney) is afforded almost absolute protection." *Id.*

Yet, the work product privilege can be waived. Waiver "generally occurs where a party . . . discloses work product materials in such a way as to 'enable an adversary to gain access to the information.'" *Utesch v. Lannett* Co., Inc., No. CV 16-5932, 2020 WL 7260775, at *10 (E.D. Pa. Dec. 9, 2020) (quoting *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991)). In *Westinghouse*, the Third Circuit held that work product protection was waived as to internal investigation materials that were voluntarily produced to adversaries—in that case, government agencies investigating alleged misconduct. 951 F.2d at 1428.

In this Court's estimation, the Dickie McCamey Reports are work product because they are internal investigation documents that can fairly be said to have been "prepared in anticipation

6

of litigation."[4] Plaintiff has demonstrated substantial need for these reports because of the late production of the Rocket article and email correspondence circulating it. To that end, the Rocket article was circulated by email among the Board of Trustees at a time when the SRU administration knew or should have known that the Dickie McCamey Reports addressed a number of the issues raised by the article. Yet, there was no reference to the Dickie McCamey Reports when the Rocket article was circulated. (*See* Docket No. 100). And, as this Court stated in its December 30, 2020 Order, "portions of these reports were used to depose the plaintiff as well as Lueken in the Hill case referenced in the Rocket article and as such, they provide context for the questioning and the witnesses' answers to same." (Docket No. 101).

In addition, the protection that work product privilege affords was waived when redacted versions of the Dickie McCamey Reports were disclosed in the Jack Hill case to plaintiff's counsel, the NCAA, Athletic Director Paul Lueken, and partially to Reynolds himself.[5] (Docket No. 107 at 7). Indeed, it appears that the only person who has not seen the Dickie McCamey Reports is Reynolds' counsel in the present litigation. Clearly, plaintiff's counsel in the Jack Hill case is SRU's adversary. The NCAA could also be considered SRU's adversary because, despite being a co-defendant in the Jack Hill case, the reports analyze whether SRU violated NCAA rules. (Docket No. 107-1 (discussing a section of the March 2013 report titled "Alleged NCAA violations")).

---

[4] The Court notes that it has already ruled that these reports are relevant to the instant litigation. (Docket No. 101). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401.

[5] Attorney Schlossberg (counsel for the NCAA in the Jack Hill case) stated during Reynolds' deposition that the Dickie McCamey Reports were produced to them during discovery. (Docket No. 107-1 at 14). Reynolds was shown portions of the redacted reports during his deposition in the Jack Hill case. Reynolds was not provided the reports to keep or review with counsel. By contrast, Paul Lueken reviewed the reports prior to his deposition. (Docket Nos. 107 at 2-3; 108 at 4; 108-3 (Lueken stating for the record that he reviewed the reports in preparation for his deposition in the Jack Hill case)).

This is analogous to the situation in *Westinghouse*, where Westinghouse disclosed the results of an internal investigation as to whether it had violated United States securities laws to the SEC and DOJ, and the Third Circuit had "no difficulty" concluding that these government agencies were Westinghouse's adversaries. 951 F.2d at 1418, 1428.

To be clear, only to the extent that disclosure was made is there waiver. In other words, whatever redacted versions of the Dickie McCamey Reports were disclosed are the versions that are no longer protected by the work product privilege. Then, waiver of these reports goes to all adversaries, not only the adversaries that were shown them in the Jack Hill case. *See In re Chevron Corp.*, 633 F.3d 153, 165 (3d Cir. 2011) ("[T]he purpose behind the work-product doctrine requires [a court] to distinguish between disclosures to adversaries and disclosures to non-adversaries[,] and it is only in cases in which the material is disclosed in a manner inconsistent with keeping it from an adversary that the work-product doctrine is waived.") (internal quotation marks and citations omitted). Once a party asserting the privilege discloses the material to an adversary, "the work product privilege is waived as to all adversaries . . . even if the disclosure is made during a prior proceeding." *Frankford Tr. Co. v. Advest, Inc.*, No. 93-CIV-329, 1995 WL 491300, at *1 (E.D. Pa. Aug. 17, 1995) (citing *Westinghouse*, 951 F.2d at 1428).

The fact that Defendants have never asserted work product privilege in their discovery responses to Plaintiff for these reports, nor were the Dickie McCamey Reports referenced in any privilege logs, bolsters the Court's conclusion. (Docket Nos. 108 at 9-12; 108-1). Defendants' response to Plaintiff's request for the Dickie McCamey Reports was that Plaintiff had exceeded his number of permitted interrogatories and the request was "not relevant to any claim or defense." (Docket No. 108-1 at 10, 12). Though Defendants did include in their "General Objection" reference to the attorney-client privilege and work product doctrine, (*see* Docket No. 40-1 at 12-

8

13), this Court has always held that a privilege log is required to assert objections on the basis of privilege and that boilerplate or general objections are disfavored and do not preserve an objection. *See Graham v. Progressive Direct Ins. Co.*, No. CV 09-969, 2010 WL 11469535, at *4 (W.D. Pa. Nov. 1, 2010) ("Rule 26(b)(5)(A)(ii) requires that a party raising a privilege as a defense to production do so in a privilege log. . . . The purpose of the privilege log is to allow opposing counsel and, if necessary, the court to determine the basis of the claim.") (internal quotation marks and citations omitted); *Fuhs v. McLachlan Drilling Co.*, No. CV 16-376, 2018 WL 5312760, at *22 (W.D. Pa. Oct. 26, 2018) ("the use of boilerplate objections is a disfavored practice and boilerplate objections should not be used for the purposes of delaying responses to legitimate requests while evaluating a potential privilege or to forestall the filing of a motion to compel by the opposing party"). "A party's threadbare and conclusory invocations of privilege are insufficient." *UPMC v. CBIZ, Inc.*, No. 3:16-CV-204, 2018 WL 1542423, at *5 (W.D. Pa. Mar. 29, 2018) (internal quotation marks and citation omitted). "Rather, claims of privilege 'must be asserted document by document, rather than as a single, blanket assertion.'" *Id.* (quoting *United Sates v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990)). The latter was not done, here.

In sum, this Court finds that work product privilege was waived when redacted versions of the Dickie McCamey Reports were disclosed to SRU's adversaries in the Jack Hill case and when Defendants failed to specifically object on the basis of the work product doctrine. *See Westinghouse*, 951 F.2d at 1429 ("We hold that Westinghouse's disclosure of work product to the SEC and to the DOJ waived the work-product doctrine as against all other adversaries."). The Court is also mindful that, among other claims, this is a Section 1983 First Amendment retaliation case, and "First Amendment cases are often fact-intensive inquiries that require well-developed

records." *J.R. by & Through Redden v. Penns Manor Area Sch. Dist.*, 373 F. Supp. 3d 550, 566 n.6 (W.D. Pa. 2019).

SRU is ordered to produce the previously redacted Dickie McCamey Reports to Plaintiff, subject to a protective order. Attorney Baxter, SRU's attorney in the Jack Hill case, previously stated for the record that he and the attorneys for the State System of Higher Education made the redactions of the reports and those redactions are of the "opinions, conclusions, or recommendations of the law firm of Dickie McCamey." (Docket No. 107-2 at 81). Further, Plaintiff states that he has not requested "core" or "opinion" work product, as this type of work product is "generally afforded near absolute protection from discovery." (Docket No. 108 at 7-8). As such, the Court expects that SRU knows or can ascertain which redacted versions of the reports were produced in the Jack Hill case and can produce these versions to Plaintiff, here.

\* \* \*

IT IS HEREBY ORDERED that Plaintiff's Motion for Leave to File a Second Amended Complaint [96] is GRANTED. Plaintiff shall file the Second Amended Complaint by **March 16, 2021**, and Defendants shall file an Answer by **April 6, 2021**.

IT IS FURTHER ORDERED that Plaintiff shall have 30 days from the filing of Defendants' Answer, or **May 6, 2021**, to complete any further depositions and the parties shall bear their own costs for additional fact discovery, as the Court finds that all parties were not as diligent in pursuing discovery as they could have been here.[6] *See* FED. R. CIV. P. 1 (stating that the

---

[6] On this note, Counsel did not afford themselves completely of the tools the Court and the rules offer them to manage discovery. The rules indicate that counsel confer at the outset regarding the scope of discovery, and here in particular, the issues surrounding the Dickie McCamey Reports should have been addressed and brought to the Court's attention at the Case Management Conference. It would appear to the Court that Plaintiff should have alerted his counsel early on in the investigation of his potential claims to the existence of these reports, even if he did not have a copy of same, as he knew he was interviewed by the attorney from Dickie McCamey. Additionally,

Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding"); *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, No. CIV.A. 00-981-RRM, 2002 WL 818061, at *5 (D. Del. Apr. 30, 2002) ("In an ideal world, counsel for the parties would work together to streamline the discovery process."). Any depositions should be solely focused on the new allegations in Plaintiff's Second Amended Complaint, the Rocket article (Docket No. 100), and the Dickie McCamey Reports.

IT IS FURTHER ORDERED that Dickie McCamey's Objections [107] are OVERRULED IN PART and the Court AMENDS its December 30, 2020 Order [101] to the extent it ordered production of the unredacted Dickie McCamey Reports. First, counsel are to meet and confer and submit to the Court a proposed protective order by **March 12, 2021**. To that end, the Dickie McCamey Reports should be used by Plaintiff and his counsel for this litigation and the related labor action, only. They cannot be disseminated any farther. The Court notes that per Defendants' earlier objection and arguments, they do not plan to rely on the Dickie McCamey Reports to support their defense. (Docket No. 87 at 11-12). Second, SRU is ordered to produce the previously redacted Dickie McCamey Reports to Plaintiff by **March 18, 2021**. The Court expects that SRU knows or can ascertain which redacted versions of these reports were produced in the Jack Hill case and can produce these versions to Plaintiff, here. Third, a post fact discovery telephone

---

to the extent that Plaintiff wanted to serve excess written discovery, he failed to make that known to the Court at the Case Management Conference. Once the Case Management Order was entered, the Plaintiff should have followed it, sought leave from the Court to serve excess written discovery, or moved to enlarge discovery. Defense counsel was not as thorough as they could have been in terms of discovery objections, the use of a privilege log, and moving for a protective order. Lastly, the Court routinely advises counsel at Case Management Conferences that they can contact the Court to schedule telephone discovery conferences should issues like these arise. The Court appreciates that counsel tried to work out their differences by email and perhaps by telephone, but unfortunately their efforts did not resolve their disputes over discovery in a timely manner. (*See* Docket Nos. 15; 16).

conference will be scheduled for **April 19, 2021 at 4:30 p.m**. The Court's law clerk will circulate dial-in information prior to the conference.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment [57] is DISMISSED, without prejudice. Defendants may refile the motion for summary judgment once discovery is complete.

Dated: March 2, 2021

<u>s/Nora Barry Fischer</u>
Nora Barry Fischer
Senior United States District Judge

cc/ecf: All counsel of record